UNITED STATES of America,
Appellee,

v.

Mike ABBAS, Appellant.

No. 73-3234.

United States Court of Appeals,
Ninth Circuit.

Oct. 4, 1974.

Robert H. Wyshak (argued), of Wyshak & Wyshak, Los Angeles, Cal., for appellant.

Arthur W. Vance, Asst. U. S. Atty. (argued), Los Angeles, Cal., for appellee.

## OPINION

Before BARNES and HUFSTEDLER, Circuit Judges, and ENRIGHT,* District Judge.

ENRIGHT, District Judge:

On March 19, 1973, a twelve count indictment was returned against the defendant by the federal grand jury for the Central District of California.

The indictment charged the defendant in each count with violations of 26 U.S. C. § 7206(2), in that he had willfully assisted in the preparation of false federal income tax returns.

On September 4, 1973, a jury found the defendant guilty as to counts six, eleven, and twelve involving the tax returns of Lucy Vinluan and Leigh and Kimbo Emerson. The defendant was found not guilty as to counts four and five, and the jury could not agree as to the remaining counts which were subsequently dismissed.

The basic issue in this case concerns the government's preparation and use, as evidence, of a number of allegedly demonstrative charts, summarizing the testimony of the witnesses as to the variation between the sums of money which the witnesses reported to the tax preparer and the amount actually listed on the returns by the preparer. The defense asserts that it was improper to have permitted the jury to receive into evidence what it contends were argumentative and conclusional materials.

The government relies in part upon United States v. Bartone, 400 F.2d 459 (6th Cir. 1968), cert. denied, 393 U. S. 1027, 89 S.Ct. 631, 21 L.Ed.2d 571 (1969) for the proposition that use of such charts has been approved. But even in circumstances where the use of charts is not improper, *Bartone* held that "it is necessary that the trial judge carefully examine this type of evidence and supporting exhibits, out of hearing of the jury, in order to determine that everything contained in the summary is supported by the proof." *Id.* at 461. This was not done and would appear to be the better practice, although the defendant was given ample opportunity over a weekend to examine the charts and thereafter to pursue his specific objections to the court.

But this is not to say that the use of charts is always permitted. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954)—albeit a case involving a complicated net worth, tax evasion situation[1]—admonished trial courts to be wary of situations in which figures, computations, and charts acquire "an existence of their own, independent of the evidence which gave rise to them." *Id.* at 128, 75 S.Ct. at 131.

Lloyd v. United States, 226 F.2d 9 (5th Cir. 1955) amplifies upon *Holland*. A lengthy citation would not be without some benefit:

The use of this type evidence, however, has inherent dangers to an accused, for a jury is often unfairly and unduly impressed by the apparent authenticity of a government witness' chart computations, as such, rather than by the truth and accuracy of the underlying facts and figures supporting them. A trial court is charged with grave responsibilities in such in-

* The Honorable William B. Enright, United States District Judge for the Southern District of California, sitting by designation.

1. The government has attempted to distinguish the instant case from *Holland* arguing that whereas the latter is a complicated, net worth, tax evasion case, the former involves simpler false return circumstances. But this contention is a double-edged sword, for where the jury is less pressed to remember precise figures and make mathematical calculations, the use of charts may be less desirable.

stance to insure that an accused is not unjustly convicted in a "trial by charts," however impressive the array produced. Ordinarily, it would be the better practice, not so carefully observed in this instance, to require that the source of the facts and figures upon which such a chart is based be fully disclosed before its admission into evidence. Whenever possible, such charts should be confined in their preparation to strictly mathematical computations, subject to detailed explanation upon the trial by the testimony of expert government witnesses, and they should not be encumbered by such impressive, conclusionary captions as "Overstatement of Merchandise Purchases", "Overstatement of Delivery Expenses", "Unreported Cash Receipts of Lloyd's Bakery", "Unreported and Undeposited Cash Receipts Invested in United States Savings Bonds", "Unreported Net Income of Mr. E. C. Lloyd", "Income Tax Unreported and Unpaid by Mr. Lloyd", such as were used on the Government charts here in dispute. While a prosecution witness may testify as to such conclusions from his mathematical computations, we think the danger in permitting the unrestricted use of such phrases upon charts results from a jury's natural tendency to accept such unsworn, conclusionary verbiage as authentic, primary proof, instead of purely in summarization and explanation of sworn testimony or authenticated documentary evidence. *Id.* at 17.

■ In general principle, we agree with this reasoning. We would conclude that it would have been better practice for the trial court to have allowed the charts to be marked for identification and used by the foundation witness as a testimonial aid, or, since they purported to represent summarized testimony, to be utilized by counsel in argument as a visual summary of complex facts. In either event, the charts should not have gone to the jury for use during their deliberations. The dangers are apparent. A signed or handwritten statement of a defendant presents an apt analogy. It would be considered physical evidence and admitted as an exhibit; an unsigned typewritten statement of such defendant in itself is hearsay. It may be read to the jury under certain circumstances; the conversation it represents may be repeated by percipient witnesses; but the unsigned typewritten statement itself would not be received as evidence. The danger inherent in such evidence is that it would act as a speaking, continuous witness throughout the jury's deliberation of certain specific, isolated —albeit significant—testimony to the exclusion of the totality of the evidence taken at the trial which must be viewed in its entirety.

■ But if the admission of the charts as exhibits and their presence during jury deliberation was error, we must next weigh whether such error was prejudicial and requires reversal. Our review of the entire record, especially including the counts upon which the defendant was acquitted, convinces us that the error was not prejudicial. In respect to the charts, the trial judge gave the defense an opportunity to cross-examine the witness who testified relative to the charts, to indicate any purported errors in the charts, and to present any similar appropriate demonstrative aids as part of the defense case. In addition, the court indicated he would give a limiting instruction and then thereafter did instruct the jury that the exhibits had been admitted as an *explanation* of other evidence while the charts were *not proof* per se; the jury was further instructed that the summaries were presented merely as a *matter of convenience* and "to the extent that you [the jury] find they are not in truth summaries of facts or figures shown by the evidence in the case you are to disregard them entirely." The defendant neither objected to the instruction as given nor requested any additional language pertaining to the limiting instruction. Viewed in such perspective, we would hold that the admission of the charts did not prejudicially harm the defendant in the instant circumstances.

At oral argument, defense counsel indicated various purported errors on several of the charts. The jury, however, did not convict the defendant of any counts associated with those charts. Counsel noted no errors in the charts coupled to the counts upon which Abbas was convicted.

Brief comment may be made on those other issues worthy of mention.

■ Defense argues that the items alleged to be false must be material to the computation of the correct tax liability to support a conviction of 26 U.S.C. § 7206(2). Edwards v. United States, 375 F.2d 862, 865 (9th Cir. 1967) belies this contention.

■ The defendant also asserts that there was insufficient evidence to prove that he was the one that aided and assisted in preparation. He reasons that since several persons within his office would have helped the taxpayers, there was too weak a nexus to him individually. Upon reviewing the transcript, we are satisfied that the evidence was sufficient. *Cf.* United States v. McKee, 456 F.2d 1049 (6th Cir. 1972), cert. denied, 407 U.S. 910, 92 S.Ct. 2436, 32 L.Ed.2d 684 (1972); United States v. Cramer, 447 F.2d 210 (2d Cir. 1971), cert. denied, 404 U.S. 1024, 92 S.Ct. 680, 30 L. Ed.2d 674 (1972); United States v. Barnes, 313 F.2d 325 (6th Cir. 1963).

The defendant also contends that the trial court improperly instructed the jury in defining "wilfully." He relies upon United States v. Bishop, 412 U.S. 346, 360, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973). A review of *Bishop* and the precedent upon which it is based, leads us to conclude that defendant's reliance is misplaced. Courts

have rejected claims that willfulness instructions must include the terms bad purpose or evil motive. . . .

. . . While the use of such terms is often helpful, all that is required are instructions which communicate the proper notion of specific intent in understandable terms. . . .

United States v. Hawk, 497 F.2d 365, 368–369 (9th Cir. 1974). As in *Hawk*, the instructions here were adequate for that purpose.

■ Finally, we may address the defendant's suggestion that the trial court improperly interjected himself by rehabilitating a government witness. In his cross-examination of the witness, defense counsel pressed the witness, attempting to demonstrate her bias because of the failure of a romance between the defendant and herself. Under the stress of the cross-examination, the witness lost her composure. At this point, the court interposed and questioned the witness to assure the jury and himself that her answers reflected truth and not prejudice. The trial court's interruption of cross-examination is always a matter of great delicacy, particularly in a jury trial. Due to the considerable discretion permitted to the trial judge in such matters, we cannot say the court abused its discretion in his inquiry.

Affirmed.