# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

MICHAEL H. BOULWARE,
*Defendant-Appellant.*

No. 05-10752

D.C. No.
CR-99-00239-ER

OPINION

Appeal from the United States District Court
for the District of Hawaii
Edward Rafeedie,* Senior District Judge, Presiding

Argued and Submitted
October 16, 2006—San Francisco, California

Filed December 13, 2006

Before: Pamela Ann Rymer and Sidney R. Thomas,
Circuit Judges, and Stephen G. Larson,** District Judge.

Opinion by Judge Rymer;
Concurrence by Judge Thomas

---

   *The Honorable Edward Rafeedie, Senior District Judge for the Central District of California, sitting by designation.

   **The Honorable Stephen G. Larson, United States District Judge for the Central District of California, sitting by designation.

19401

**COUNSEL**

John D. Cline, Jones Day, San Francisco, California, for the defendant-appellant.

Alan Hechtkopf (signed the brief) and Karen M. Quesnel, Department of Justice, Tax Division, Washington, D. C., for the plaintiff-appellee.

**OPINION**

RYMER, Circuit Judge:

In a return trip following retrial after we reversed his first conviction, *United States v. Boulware*, 384 F.3d 794 (9th Cir. 2003) (*Boulware I*), Michael H. Boulware appeals his conviction and sentence for filing a false tax return in violation of 26 U.S.C. § 7206(1), tax evasion in violation of 26 U.S.C. § 7201, and conspiracy to make a false statement to influence a financial institution in violation of 18 U.S.C. § 1014. We conclude there is no reversible error, and affirm.

I

Without belaboring the background recited in our prior opinion, Boulware is the founder, former President, and majority owner of a closely held corporation, Hawaiian Isles Enterprises (HIE). HIE dealt in tobacco distribution, coffee processing and sales, arcade games, vending machines, and

bottled water. A second superceding indictment charged Boulware with thirteen (later reduced to nine) counts of tax evasion and tax fraud in connection with his failure to report funds diverted from HIE as income for the years 1989-97; one count of conspiracy to make a false statement to influence a financial institution in connection with HIE's use of false invoices in applying for a loan from GECC Finance Corporation; and four counts of making a false statement to influence a financial institution in connection with the false invoices. Boulware was convicted on the tax counts and the conspiracy count, which we reversed on the ground that the district court had erroneously excluded evidence of a Hawaii state court's adjudication of property rights in certain funds diverted from HIE. *Boulware I*, 384 F.3d at 800-09. On retrial as originally, the government's theory was that during the period 1989-1997, through a number of different devices, Boulware diverted more than $10 million from HIE and failed to report or pay taxes on this income; and that he used fraudulent invoices in applying for a bank loan. He was convicted on all counts. The district court again sentenced Boulware to 36 months' imprisonment on the false return counts, but increased the sentence from 51 to 60 months on the tax evasion and conspiracy counts, all to run concurrently.

Boulware timely appeals.

## II

**[1]** Boulware first claims that the district court erred in excluding evidence that he contends would have shown that the funds he took from HIE were nontaxable returns of capital rather than income. An essential element of the crime of tax evasion is the existence of a tax deficiency. *Boulware I*, 384 F.3d at 810. However, for purposes of civil tax liability, when a distribution from a corporation to its shareholder constitutes a return of capital, that distribution is normally not taxable. 26 U.S.C. §§ 301, 306; *United States v. Miller*, 545 F.2d 1204, 1210-12 & n.5 (9th Cir. 1976). Hence, to negate the tax defi-

ciency element, Boulware sought to show that the money he received from HIE constituted returns of the capital he had invested as the corporation was, at the time, without earnings or profits. The government moved in limine to preclude a "return of capital" defense, relying on *Miller*. There, we held that constructive distribution rules applicable in the civil arena could not be automatically applied to a criminal tax matter in the absence of some demonstration on the part of the defendant or corporation that distributions were intended to be a return of capital. *Id.* at 1214-15. In response, Boulware argued that whether corporate funds could be characterized as a return of capital is a question of fact for the jury, and he proffered testimony of an expert who would explain that if the monies transferred from HIE to Boulware were not loans or advances, or if Boulware did not use those funds for corporate purposes, then the transfer could be deemed a constructive dividend or return of capital to Boulware which may or may not be income to him depending upon whether HIE had earnings and profits for the years when the transfers occurred. The district court ruled that this offer of proof did not meet the *Miller* threshold because the defendant must show not merely that the funds *could* have been a return of capital, but that the funds were *in fact* a return of capital at the time of the transfer.

[2] Boulware contends that the district court misread *Miller*. In his view, the issue in *Miller* was whether the evidence was sufficient to convict the taxpayer in spite of his return of capital defense, not whether the taxpayer had made a sufficient initial showing to introduce evidence pertaining to that defense; thus, the rest of *Miller* — upon which the district court relied — is dicta. We disagree that any part of *Miller*'s reasoning can be disregarded. *See Baripind v. Enomoto*, 400 F.3d 744, 750-51 (9th Cir. 2005) (holding that what a majority opinion says regarding an issue presented for review is the law of the circuit, regardless of whether or not it is "in some technical sense 'necessary' to the disposition in the case"). Boulware concedes that *Miller* controls if this is so. Accord-

ingly, his alternative position that imposing an intent require-ment creates a disconnect between civil and criminal liability necessarily fails. We held in *Miller* that the characterization of diverted corporate funds for civil tax purposes does not dic-tate their characterization for purposes of a criminal tax eva-sion charge; rather, the appropriate characterization for criminal purposes is whether the defendant has willfully attempted to evade the payment or assessment of a tax. 545 F.2d at 1214. As we explained, "[w]here the taxpayer has sought to conceal income by filing a false return, he has vio-lated the tax evasion statutes. It does not matter that that amount could have somehow been made non-taxable if the taxpayer had proceeded on a different course." *Id.* Boulware's reliance on *Truesdell v. Commissioner*, 89 T.C. 1280 (1987), where the U.S. Tax Court held that funds diverted from a cor-poration in excess of earnings and profits were returns of cap-ital, is misplaced because *Truesdell* was a civil proceeding and thus inapposite given *Miller*'s explicit holding that civil classifications of diverted corporate funds do not control in criminal cases. *See also United States v. Williams*, 875 F.2d 846, 849-52 (11th Cir. 1989) (approving *Miller* despite *Trues-dell* and distinguishing between civil and criminal contexts); *United States v. Schmidt*, 935 F.2d 1440, 1446 (4th Cir. 1991) (noting that "[t]he important distinction between civil and criminal tax cases concerning the key element to be focused upon is compellingly set out in [*Miller*].").

**[3]** Boulware also posits that requiring a defendant in a criminal case to show that a distribution was intended to be a return of capital unconstitutionally shifts the burden of proof to the defendant, but again, we held in *Miller* and *Boulware I* that once the government has shown that the taxpayer diverted funds from the corporation and failed to report them, the burden shifts to the taxpayer to show that the funds consti-tuted a return of capital. *Boulware I*, 384 F.3d at 811 (citing *Miller*, 545 F.2d at 1215 & n.13). Like the defendant in *Mil-ler*, Boulware "presented no concrete proof that the amounts were considered, intended, or recorded on the corporate

records as a return of capital at the time they were made." *Id.* at 1215. Nor were any adjustments made to HIE's books showing a return of capital to Boulware, or to his co-shareholder. *See id.* at 1214 n.12. Accordingly, the district court properly required a foundation to be laid before allowing the asserted defense to go forward, and properly rejected Boulware's proffer as inadequate.

Finally, Boulware points out that accepting the district court's interpretation of *Miller* puts us in conflict with the Second Circuit, which has held that a taxpayer need not show that the distribution was characterized as a return of capital at the time of the transaction. *See United States v. D'Agostino*, 145 F.3d 69, 72-73 (2d Cir. 1998); *United States v. Bok*, 156 F.3d 157, 162 (2d Cir. 1998) (holding that a showing that a corporation had no earings and profits is sufficient to support a return of capital defense, but acknowledging that this is a departure from the prevailing view among federal courts). Whether or not the facts in this case would implicate the Second Circuit's rule, which is by no means certain, we are satisfied that the district court correctly interpreted and applied *Miller* by which it, and we, are bound.

## III

Secondly, Boulware challenges exclusion of evidence that he believes would have shown that HIE overpaid tobacco taxes and was simply making up for the overpayment by under-reporting income. The district court sustained a relevance objection to testimony by Boulware's attorney regarding advice he had given Boulware about payment of these taxes, and to testimony by HIE's controller regarding tax adjustments made on HIE's books. Boulware himself, however, was allowed to testify that HIE had been overpaying its tobacco taxes and had tried to recoup these overpayments by underpaying in subsequent periods and adjusting its books accordingly. He admitted that this was "self-help," and testi-

fied that he did not understand the increase in HIE's income to have any effect on his own taxes.

**[4]** We discern no error. Boulware failed before the district court to link the excluded testimony about HIE's tobacco taxes to his personal income taxes, and fares no better before us. His suggestion that tobacco tax evidence was probative of intent lacks factual or legal support. In any event, nothing about it indicates that Boulware did not have income that he failed to report on his personal return. Although the court allowed some exploration of the subject at Boulware's behest, it retained discretion to curtail the extent of it. As the subject itself lacked relevance, the court likewise properly refused to read HRS 245-7 to the jury; whether or not HIE's method of tax recovery was legal under state law had no bearing on whether Boulware was guilty of federal tax evasion or tax fraud.

IV

Boulware next asserts that the court's receipt of a summary exhibit categorizing and organizing a series of schedules listing each financial transaction pertaining to his taxable income over the relevant period offended Rule 1006 of the Federal Rules of Evidence. The government introduced the compilation (Exhibit 3300) through its summary witness, IRS Agent Randall Tanahara. Boulware objected on the ground that Exhibit 3300 was cumulative and not allowed of a summary witness. The court overruled the objection. Later, Boulware moved to strike the exhibit on the ground that it merely summarized evidence already in the record, which the court denied. Boulware did not (and does not) dispute the accuracy of the information contained in the schedules. The jury was instructed that charts and summaries are only as good as the underlying supporting material admitted into evidence, and that the jury should give them only such weight as it thinks the underlying material deserves.

**[5]** Boulware relies on *United States v. Wood*, 943 F.2d 1048 (9th Cir. 1991), *United States v. Soulard*, 730 F.2d 1292 (9th Cir. 1984), and *United States v. Abbas*, 504 F.2d 123 (9th Cir. 1974), as articulating a bright-line rule against admission of summary charts as evidence. There is no question that, as *Wood*, *Soulard*, and *Abbas* indicate, we do not approve of receiving summary exhibits of material already in evidence; however, in none of these cases did we reverse for this reason. Moreover, we have elsewhere recognized a district court's discretion under Fed. R. Evid. 611(a) to admit summary exhibits for the purpose of assisting the jury in evaluating voluminous evidence. *See, e.g., United States v. Poschwatta*, 829 F.2d 1477, 1481 (9th Cir. 1987) (holding that admission of a chart summarizing income figures already admitted into evidence, while perhaps not the best practice, was not an abuse of discretion); *United States v. Gardner*, 611 F.2d 770, 776 (9th Cir. 1980) (holding that admission of a chart summarizing the defendant's financial status was well within the discretion of the trial court pursuant to Fed. R. Evid. 611(a)). Here, the court no doubt believed that it would be helpful to have the voluminous financial materials reduced to summary form (even though, as it happens, the summary was 116 pages long). Nevertheless, we do not need either to embrace or condemn the procedure followed in this case because, even if it were error to allow the summary exhibit into evidence, the error is harmless given admissibility of the underlying data, lack of objection to accuracy of the summary, and the limiting instruction. *See United States v. Krasn*, 614 F.2d 1229, 1238 (9th Cir. 1980) (holding that charts should not have been admitted, but that it was harmless error as the defendant had an opportunity to challenge the facts and data upon which the charts were based and the court gave a limiting instruction); *Gardner*, 611 F.2d at 776 (noting the defendant's opportunity to cross-examine the government witness who prepared the chart and finding no reversible error in admission of chart); *Abbas*, 504 F.2d at 125 (same).

V

The government questioned Boulware during cross-examination about a letter that he had written to his girlfriend, Jin Sook Lee, soon after divorcing his wife in 1994. The letter referred to gifts Boulware had bought for Lee, including a diamond that he testified was purchased with a credit card. The letter was not received into evidence. A 1991 invoice with the name "Gina Lee" reflecting sale of a 5.03 carat diamond for $70,000 was in evidence; this purchase was evidently by cashier's check. The Assistant United States Attorney (AUSA) argued in closing that, based on his recollection, Boulware had "lied to you during the course of this case" about how he bought the diamond and that if he would lie about how he bought a diamond for $70,000, he would lie about how he got $10 million. The day after closing arguments were concluded, Boulware moved for a mistrial, or alternatively, for an instruction about the government's misstatement. The court denied both requests. It found that the AUSA simply made a mistake in good faith and that, assuming the argument was improper, it was not prejudicial because it was but a single part of an extensive litany of evidence showing Boulware's lack of veracity, it had to do with a fifteen-year old event, and the AUSA stated that he was only relating his own recollection.

[6] Even if the AUSA's recollection — thus his statement to the jury — were incorrect, the district court did not clearly err in its findings or abuse its discretion in denying Boulware's requests. The inaccuracy of the AUSA's characterization was not immediately apparent, and the record was somewhat ambiguous given references to different diamond purchases. Regardless, it is unlikely that the statements materially affected the trial. The jury was instructed that statements of counsel are not evidence, and that the jury's recollection of the evidence controls. *See United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992) (observing that "[t]o determine whether the prosecutor's misconduct affected

the jury's verdict, we look first to the substance of a curative instruction."). The point was but one of many made in closing about Boulware's credability. And the evidence against Boulware was strong. *See United States v. Weatherspoon*, 410 F.3d 1142, 1151 (9th Cir. 2005) (noting importance of the strength of the case against a defendant in measuring prejudicial effect of improper statements).

## VI

We reversed Boulware's first conviction because the district court had erroneously excluded evidence of a state court judgment establishing that money Boulware had taken from HIE and given to Lee was not a gift to her, but rather belonged to HIE and was being held in trust by Lee. *Boulware I*, 384 F.3d at 798, 800. Although we held that the judgment was relevant, we also rejected Boulware's argument that it was controlling on the issue of whether the money held by Lee belonged to HIE and was therefore not taxable to him. The district court on retrial received the state court judgment into evidence, but it instructed the jury that the state court judgment determined that the money that Boulware transferred to Lee remained the property of HIE; that this determination was not binding on the jury; but that the judgment could be considered in determining the purpose of the transfer and whether it constituted unreported income to Boulware.

[7] Boulware now maintains that the state court judgment resolving the property dispute between Lee and HIE is binding on the federal courts and, additionally, that *Boulware I* was wrong in concluding otherwise. However, *Boulware I* is the law of the case, and controlling. *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1998) (en banc). Under our mandate, "the district court did not err in ruling that the state court judgment does not have preclusive effect as to the ownership of the monies." *Boulware I*, 384 F.3d at 805. The court's instructions on remand were faithful to *Boulware I*, and thus were not erroneous.

VII

Boulware's press for reversal based on cumulative error fails as there is no accumulation.

VIII

**[8]** Boulware raises two issues with respect to his sentence. First, he contends that the court's imposing a 60-month term of custody on the tax evasion and conspiracy counts is vindictive given that his original sentence on these counts, before reversal, was to 51 months. We disagree. Different evidence was adduced upon retrial. For example, Nathan Suzuki testified about Boulware's continuing fraudulent activities even after he knew about the government's investigation. Additional evidence could lead the district judge to find that an increased sentence was objectively justified. *Wasman v. United States*, 468 U.S. 559, 565 (1984).

Additionally, Boulware argues that his sentence of 60 months on the conspiracy conviction is unreasonable and must be vacated if the tax counts are reversed. As we affirm conviction on the tax counts, the premise of Boulware's challenge to the conspiracy sentence disappears.

AFFIRMED.

---

THOMAS, Circuit Judge, concurring:

I agree entirely with the analysis and conclusions of the majority. I write separately only to comment that if we were writing on a clean slate, rather than under the controlling precedent of *United States v. Miller*, 545 F.2d 1204, 1211-15 (9th Cir. 1976), I would adopt the approach of the Second Circuit concerning the return to capital defense. *See United States v.*

*Bok*, 156 F.3d 157, 162 (2d Cir. 1998); *United States v. D'Agostino*, 145 F.3d 69, 72-73 (2d Cir. 1998).

I believe the Second Circuit's analysis is more consistent with the statutory requirements of criminal tax evasion. The elements of criminal tax evasion under 26 U.S.C. § 7201 are: "(1) the existence of a tax deficiency, (2) willfulness in attempted evasion of taxes, and (3) an affirmative act constituting an evasion or attempted evasion." *United States v. Marabelles*, 724 F.2d 1374, 1380 (9th Cir. 1984). Thus, an explicit requirement to impose liability under § 7201 is "the existence of a tax deficiency." As the majority opinion notes, notwithstanding a taxpayer's wrongful intent regarding diverted income, a sole shareholder of a company cannot be held civilly liable for any distribution that exceeds the earnings and profits of the corporation and that does not exceed the shareholders adjusted basis in the stock—instead such diversions are considered a return of the shareholder's capital investment. *Truesdell v. Commissioner*, 89 T.C. 1280, 1294-95 (T.C. 1987) (relying on 26 U.S.C. §§ 301, 306). *See also United States v. Miller*, 545 F.2d 1204, 1210-12 & n.5 (9th Cir. 1976). Thus, *Miller*—and now the majority opinion—hold that a defendant may be criminally sanctioned for tax evasion without owing a penny in taxes to the government. Not only does this result indicate a logical fallacy, but is in flat contradiction with the tax evasion statute's requirement of "the existence of a tax deficiency." *Marabelles*, 724 F.2d at 1380. Therefore, without the constriction of *Miller*, I would hold that the Second Circuit approach to the return to capital defense is the better one, adopting the approach that "the return of capital theory applies equally in both criminal and civil cases, assuming the diversion itself was not unlawful." *Bok*, 156 F.3d at 162 (citing *D'Agostino*, 145 F.3d at 72-73).

I emphasize that even if we were to apply *Bok* and *D'Agostino* to the case at hand, the outcome would not be affected. *Bok* expressly holds that the return to capital defense does not apply if the diversion itself were unlawful. *Bok*, 156

F.3d at 162. More broadly, the Internal Revenue Service does not consider distributions to be a return to capital if made for unlawful purposes. *Truesdale*, 89 T.C. at 1298 (only permitting the return to capital defense after determining that the diversions "were not per se unlawful[,] . . . not, at least on their face, stolen, embezzled or diverted in fraud of creditors"). Because Boulware claimed that the diversions were made to defraud his ex-wife from her share of property in the divorce proceedings, these diversions may be properly considered unlawful. *United States v. Boulware*, 384 F.3d 794, 801 (9th Cir. 2004). In addition, the record indicates that Boulware was not a sole shareholder of HIE, which would also likely preclude him from asserting a return to capital defense. *See Truesdale*, 89 T.C. at 1282 (petitioner was president and sole shareholder of the company from which funds were diverted); *Bok*, 156 F.3d at 160 (similarly applying the return to capital defense in the context of a sole shareholder).