**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

              v.

MARVIN MCCALEB, aka Marvin
Darryl McCaleb; Marvin Darell
McCaleb; Marvin Darrell
McCaleb; Dary McCaleb; Marvin
McCaleb; Marvin Darryl McCabb;
Morgan; Sammy Jackson,
              *Defendant-Appellant.*

No. 06-50387

D.C. No.
CR-03-00849-CBM-
1

OPINION

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted
November 18, 2008—Pasadena, California

Filed January 13, 2009

Before: Myron H. Bright,* Stephen S. Trott, and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Bright

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

**COUNSEL**

Verna Jean Wefald, Pasadena, California, for the appellant.

Thomas P. O'Brien, United States Attorney, Christine C. Ewell, Assistant United States Attorney, and Janet C. Hudson, Assistant United States Attorney, Los Angeles, California, for the appellee.

---

**OPINION**

Bright, Circuit Judge:

Appellant Marvin McCaleb challenges his drug-related convictions and sentence to life imprisonment, asserting that the district court (1) improperly instructed the jury, (2) abused its discretion by admitting certain expert-witness testimony, and (3) relied on unproven prior convictions. Because the district court did not (1) plainly err in its jury instructions, (2) abuse its discretion by admitting certain expert-witness testimony, or (3) improperly rely on unproven prior convictions at sentencing, we affirm.

FACTS AND PROCEDURAL HISTORY

In November 2004, a federal grand jury returned an indictment against McCaleb and other individuals. Count One of the indictment charged McCaleb and other defendants with conspiracy to manufacture, to aid and abet the manufacture of, to distribute, and to possess with intent to distribute, phencyclidine ("PCP"), in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A). Count Two of the indictment charged McCaleb and two other defendants with possession of ethyl ether, a precursor chemical, knowing and having reasonable cause to believe that it would be used to manufacture PCP, in violation of 21 U.S.C. § 841(c)(2).

McCaleb and a codefendant's trial began in March 2005. At trial, McCaleb conceded guilt on the lesser-included offense in Count One, conspiracy to possess ethyl ether, and Count Two. In April 2005, the jury returned guilty verdicts on Counts One and Two. Ambiguously, the jury also found McCaleb guilty of Count One's lesser-included offense. After the clerk read the verdict in open court, the district court called counsel to sidebar and stated the following:

> According to our instructions, the jury should have only answered [the lesser-included offense] if they found the defendant not guilty of Count 1. So what I would be inclined to do is just to indicate to them that they should go back and give them another verdict form, and they should be clear as to whether they find the defendant guilty or not guilty as to Count 1. And if they find the defendant not guilty as to Count 1, then they shouldn't answer [the question about the lesser-included offense].
>
> . . . .
>
> So I would . . . give them another verdict form and ask them to be clear about that and then to return that.

Without objection from either party, the district court told the jury the following: "Ladies and gentlemen of the jury, in looking at the verdict forms that you have returned for each of the defendants, it is unclear as to what you intended your verdict to be as to Count 1 of the indictment." The district court then stated:

> So, if you intended as to Count 1 to find the defendants not guilty, then of course you would consider the necessary lesser included, and you would advise the Court as to your verdict.

> You would then date, sign the verdict form, and return it.
>
> If — on the other hand, if you find the defendants guilty as to Count 1, then you don't indicate anything in the blank for the necessary lesser included. I think that's consistent with the instruction. But maybe we just didn't explain it very well.

After this instruction, the district court gave the jury a clean copy of the verdict form and told the jury to "retire, continue deliberating." And after further deliberations, the jury returned a verdict finding McCaleb guilty on Counts One and Two. In accordance with the alternative nature of Count One and its lesser-included offense, the jury did not fill in the lesser-included-offense blank on the verdict form.

After the guilty verdicts, the trial resumed on the issue of drug quantity, and, in May 2005, the jury returned a special verdict finding that the amount of PCP involved in Count One was at least 100 grams. The jury's quantity finding and evidence of McCaleb's two prior felony drug convictions triggered a statutorily mandated life sentence for Count One. *See* 21 U.S.C. § 841(b)(1)(A). In June 2006, the district court sentenced McCaleb to life imprisonment on Count One and a concurrent 240-month term on Count Two. This appeal follows.

## DISCUSSION

### I.

McCaleb did not object to any of the jury instructions that he now challenges on appeal. Accordingly, we review McCaleb's jury-instruction claims for plain error. *See United States v. Marchini*, 797 F.2d 759, 767 (9th Cir. 1986); *see also* Fed. R. Crim. P. 52(b). Under this standard, a defendant must show an "error" that is "plain" and that "affects substan-

tial rights." *See United States v. Olano*, 507 U.S. 725, 732 (1993). Even when a defendant makes all three showings, we will exercise the discretion to reverse a conviction only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See id.*

A.

McCaleb contends first that his convictions should be reversed because the district court "sua sponte vacated the verdict . . . on the grounds that it was inconsistent as to count one, and then ordered the jurors to resume deliberations, resulting in an unauthorized second verdict that was necessarily coerced."

**[1]** "Any criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988). Coercion can occur when, for example, a district court tells a jury that it must reach a decision, *Jenkins v. United States*, 380 U.S. 445, 446 (1965), a district court polls a jury before it reaches a verdict, *Brasfield v. United States*, 272 U.S. 448, 449-50 (1926), or a special verdict form "reformulate[s] the elements of the crime," *United States v. Reed*, 147 F.3d 1178, 1181 (9th Cir. 1998).

**[2]** We conclude that McCaleb's assertion that the district court coerced a verdict lacks merit. The record shows that the jury found McCaleb guilty both of Count One and Count One's lesser-included offense. In such circumstances, a district court may treat the guilty verdict on the lesser-included offense as surplusage. *See, e.g.*, *United States v. Howard*, 507 F.2d 559, 563 (8th Cir. 1974). If a district court can disregard a guilty verdict on a lesser-included offense, then it does not plainly err by asking the jury to clarify its verdict. After discovering the ambiguity, the district court here instructed the jury on the alternative nature of these offenses and asked the jury to clarify its verdict. The district court stated that it ordered the jury to reconvene because it was "unclear as to

what [the jury] intended [its] verdict to be as to Count 1 of the indictment." Moreover, as McCaleb concedes, "the [district] court may ask the jury to clarify an inconsistent or ambiguous verdict." *See Larson v. Neimi*, 9 F.3d 1397, 1402 (9th Cir. 1993) (stating that such a practice "comports with common sense as well as efficiency and fairness").

**[3]** The cases McCaleb cites in support of his argument are distinguishable. In *Jenkins*, the Supreme Court reversed a conviction because a district court had instructed a dead-locked jury that it must reach a verdict. *See* 380 U.S. at 446. But the jury here was neither deadlocked nor told that it must reach a verdict. Similarly, this Court held in *United States v. Pino-Noriega* that a defendant waives his right to testify in his defense by waiting until after the jury had reached its verdict to inform the district court that he wanted to testify. *See* 189 F.3d 1089, 1094-96 (9th Cir. 1999). But nothing in *Pino-Noriega* limits a district court's authority to clarify an ambiguous verdict. Thus, we conclude that the district court did not err.[1]

## B.

**[4]** McCaleb also challenges his conviction on Count One by arguing that the district court "failed to instruct on the elements of the four objects of the conspiracy, thereby lessening the prosecution's burden of proof." It is well-established that a district court errs if it fails to instruct the jury on an element of a charged offense. *See United States v. Alghazouli*, 517 F.3d 1179, 1189 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 237 (2008). Similarly, a district court plainly errs in a conspiracy case if it "fails to instruct the jury on an element of the crime that is the object of the conspiracy." *Id.*

---

[1]McCaleb makes much of the district court's decision to "vacate" the verdict, arguing that a district court has no authority to vacate a verdict because it is inconsistent. But the district court did not vacate the verdict; it simply asked the jury to clarify an otherwise ambiguous verdict form.

To prove a conspiracy, the government must show "(1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive crime." *United States v. Sullivan*, 522 F.3d 967, 976 (9th Cir. 2008) (quotation marks omitted).

McCaleb argues that the district court did not instruct the jury on the elements of manufacturing PCP, one of the four objects of the conspiracy. The elements of manufacturing PCP are straightforward. The government must prove that a defendant "(1) knowingly or intentionally (2) manufactured [PCP]." *United States v. Basinger*, 60 F.3d 1400, 1406 (9th Cir. 1995).

**[5]** Here, the district court's jury instructions as a whole sufficiently apprised the jury that the objects of the offense had a mens rea component. McCaleb's argument, therefore, turns on whether the district court plainly erred by using, but not defining, the term "manufacture." A district court does not commit plain error by failing to define a word when it "is a common word which an average juror can understand and which the average juror could have applied to the facts of [the] case without difficulty." *United States v. Chambers*, 918 F.2d 1455, 1460 (9th Cir. 1990) (holding that failure to define "knowingly" was not plain error); *see also United States v. Garza-Juarez*, 992 F.2d 896, 910 (9th Cir. 1993) (holding that failure to define "possession" was not plain error). We conclude that the district court did not commit plain error by failing to define manufacture, particularly when it instructed the jury that any undefined word in the instructions "means just what you think it would mean, the ordinary meaning."[2]

---

[2]The government must prove only one of the objects to support a conspiracy conviction. *See Sullivan*, 522 F.3d at 976. Here, the jury "unanimously agree[d]" that McCaleb had conspired to commit each of the four objects. Thus, because the jury's instructions on manufacturing PCP were sufficient to convey the elements of that offense, we need not consider McCaleb's challenges to the district court's instructions for the other objects.

## C.

McCaleb contends next that the district court gave a plainly erroneous jury instruction at sentencing. After the jury found McCaleb and his codefendant guilty, the district court instructed the jury as follows:

> [N]ow that you have reached a verdict and having returned a verdict of guilty as to each of the defendants, you will now be asked to complete a special verdict form specifying whether *the amount of PCP involved in each defendant's commission of the offense* charged in Count 1 of the first superseding indictment exceeded a specified quantity.

(Emphasis added.)

McCaleb argues that this instruction constituted plain error because "each person involved in a conspiracy may be sentenced only for the quantity of drugs that he reasonably foresaw would be distributed or manufactured, or that fell within the scope of his agreement with his coconspirators."

In *United States v. Becerra*, this Court stated that "[u]nder the [Sentencing] Guidelines, each conspirator may be sentenced only for the quantity of drugs that he reasonably foresaw would be distributed or that fell within the scope of his own agreement with his co-conspirators." 992 F.2d 960, 966 (9th Cir. 1993). But in *United States v. Mesa-Farias*, this Court clarified that "[t]he reasonably foreseeable test of *Becerra* limits a conspirator's liability only for drugs possessed by a coconspirator, not for drugs possessed by the conspirator himself." 53 F.3d 258, 260 (9th Cir. 1995).

**[6]** Thus, the district court was not required to give the "reasonably foreseeable" instruction in this case. As the district court aptly concluded in its order denying McCaleb's motion for a new trial:

> [T]he Government offered evidence that both McCaleb [and his codefendant] *possessed* and participated in the delivery of amounts of precursor chemicals that were more than sufficient to produce 100 grams of PCP. Therefore the issue of foreseeability as set forth in [*Becerra*] is not an issue because there is no foreseeability requirement for the quantities possessed by [McCaleb].

(Emphasis added.) And the fact that McCaleb possessed precursor chemicals, and not PCP itself, is of no moment because the jury found McCaleb guilty of Count Two, possessing ethyl ether either knowing or having reasonable cause to believe that it would be used to make PCP. We conclude that the district court did not plainly err.

## II.

McCaleb argues next that the district court improperly admitted the testimony of a Drug Enforcement Administration ("DEA") forensic chemist because that testimony was insufficiently reliable under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). We review a district court's decision to admit expert opinion testimony for an abuse of discretion. *See United States v. Gonzales*, 307 F.3d 906, 909 (9th Cir. 2002).

Federal Rules of Evidence 702 allows for the admission of "scientific, technical, or other specialized knowledge" when "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." A district court may rely on various factors in evaluating such evidence, including (1) whether the theory can be or has been tested; (2) whether the theory has been subjected to peer review; (3) whether the error rate is known and standards exist to control the operation of the technique; and (4) whether the theory has gained general acceptance. *Daubert*, 509 U.S. at 593-94. A district

court is not required to "mechanically apply the *Daubert* factors" and has "broad discretion when discharging [its] gatekeeping function." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).

**[7]** The specific claim of error relates to permitting a DEA forensic chemist, A. Harman, to testify about the actual yield of PCP that could be produced in a clandestine laboratory for purposes of establishing the fact that the conspiracy in Count One involved more than 100 grams of PCP. We see no error.

First, Harman testified that the 25% figure was "based on an aggregate of data compiled by the DEA" from seizures from clandestine laboratories. Harman testified that the DEA maintains an internal database, which contains data on the actual yield of PCP produced in clandestine laboratories and that she reviewed an e-mail from "headquarters," which indicated that the average yield from such laboratories was between 30% and 40%. Thus, Harman opined that the 25% figure was a "conservative estimate" of actual yield in a clandestine laboratory. Harman's testimony was not, therefore, based on "unsubstantiated speculation and subjective beliefs." *See Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997). Moreover, Harman stated that the 25% figure is "commonly used," by "forensic chemists throughout DEA." Harman testified that there are "an average of 30 chemists in each of the [DEA's] eight laboratories." *See Daubert*, 509 U.S. at 594 (noting that general acceptance among scientists bears on reliability).

Second, Harman testified that she was familiar with a study published in the Journal of Medicinal Chemistry regarding actual yields of PCP in a laboratory. And the district court noted that Harman's opinion, at least in part, is "based on published articles." *See Daubert*, 509 U.S. at 593-94 (stating that publication is one means to establish the reliability of a scientific theory or methodology).

Finally, Harman stated that when she synthesized PCP in her laboratory, she obtained an actual yield of about 55%. She testified that she considered this yield when she opined that a 25% yield in a clandestine laboratory is a conservative estimate. And Harman testified that one of the purposes of her efforts to synthesize PCP was to "mak[e] a determination on the issue of actual yield." We conclude that the district court did not abuse its discretion by admitting Harman's testimony.

## III.

**[8]** Finally, McCaleb challenges his sentence, arguing that "because [his] prior convictions were not found true by a jury beyond a reasonable doubt, they cannot be used to enhance his sentence to life imprisonment." Reviewing the constitutionality of his sentence de novo, *United States v. Flores-Sanchez*, 477 F.3d 1089, 1093 (9th Cir. 2007), *cert. denied*, 127 S. Ct. 3025 (2007), we conclude that the district court did not improperly rely on McCaleb's prior convictions. *See, e.g.*, *Almendarez-Torres v. United States*, 523 U.S. 224, 226-27 (1998) (holding that a prior conviction that increases the defendant's sentence may be decided by the judge, not the jury); *Flores-Sanchez*, 477 F.3d at 1093 (same).

## CONCLUSION

Accordingly, we **AFFIRM** McCaleb's convictions and sentence.