**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

MICHAEL H. BOULWARE,
            *Defendant-Appellant.*

No. 05-10752

D.C. No.
CR-99-00239-ER

OPINION

Appeal from the United States District Court
for the District of Hawaii
Hon. Edward Rafeedie,* Senior District Judge, Presiding

Argued and Submitted
January 21, 2009—Pasadena, California

Filed March 9, 2009

Before: Pamela Ann Rymer and Sidney R. Thomas,
Circuit Judges, and Stephen G. Larson,** District Judge.

Opinion by Judge Thomas

---

*The Honorable Edward Rafeedie, Senior District Judge for the Central District of California, sitting by designation. The panel notes with regret the passing of Judge Rafeedie, who served as a federal district judge with great distinction from 1982 until his untimely death in 2008. He will be greatly missed.

**The Honorable Stephen G. Larson, United States District Judge for the Central District of California, sitting by designation.

2921

**COUNSEL**

John D. Cline, Kelli Crouch, Jones Day, San Francisco, California, for the defendant-appellant.

Nathan J. Hochman, Assistant Attorney General; Alan Hechtkopf, Karen M. Quesnel, S. Robert Lyons, Attorneys, Department of Justice, Tax Division, Washington, D.C., for the plaintiff-appellee.

**OPINION**

THOMAS, Circuit Judge:

This case returns to us from the Supreme Court with directions to conduct a thorough examination of the record to determine whether or not the defendant's offer of proof was sufficient to justify the presentation of a "return of capital" theory to the jury. We conclude it was not and affirm the judgment of the district court.

I

The facts of this case have been described fully in prior appellate decisions,[1] so we need not explain the background

---

[1] *Boulware v. United States*, ___ U.S. ___, 128 S. Ct. 1168 (2008) ("*Boulware III*"); *United States v. Boulware*, 470 F.3d 931 (9th Cir. 2006)

in detail. In brief, Michael H. Boulware was the president and fifty-percent owner of Hawaiian Isles Enterprises ("the corporation"), a distributor of tobacco, water, coffee, vending machines, and video games. Boulware was initially convicted on five counts of filing a false tax return in violation of 26 U.S.C. § 7206(1), four counts of tax evasion in violation of 26 U.S.C. § 7201, and conspiracy to make a false statement to a federally-insured financial institution in violation of 18 U.S.C. § 371, all related to his receipt of certain funds from the corporation without disclosing the same on his income tax returns.

On appeal from the first trial, we reversed the tax convictions because of the exclusion of evidence regarding a state court's adjudication of property rights in funds diverted from the corporation, and affirmed the conspiracy conviction. *Boulware I*, 384 F.3d at 798-99.

Boulware was re-tried and convicted on the five counts of filing false tax returns and the four counts of willfully attempting to evade taxes. The government's theory was that Boulware diverted more than $10 million from the corporation for his personal use, without disclosing those funds in his tax returns. Boulware asserted a number of alternative theories in an attempt to show the diversions were proper,[2] including claiming the distributions were a non-taxable return of capital. To that end, Boulware sought to present evidence, including expert witness testimony, that the corporation had no earnings and profits in the relevant taxable years, so the money distributed by the corporation was, in fact, a non-taxable return of capital up to the amount of his basis in his stock. 26 U.S.C. §§ 301, 316(a).

_____

("*Boulware II*"); *United States v. Boulware*, 384 F.3d 794 (9th Cir. 2004) ("*Boulware I*").

[2]Boulware also argued, as he had in *Boulware I*, that the corporate distributions were actually loans, *see* 384 F.3d at 811, or, alternatively, that the funds were held in trust for the purchase of his then-wife's stock, *see* 384 F.3d at 800.

The government filed a motion in limine to prevent Boulware from presenting evidence regarding the "return of capital" theory. It relied on then-existing circuit precedent that a defendant was required, as a prerequisite to the assertion of the theory, to show that the corporation intended the distribution to be a return of capital. *See United States v. Miller*, 545 F.2d 1204, 1215 (9th Cir. 1976).

The district court granted the motion in limine because Boulware's proffer failed to satisfy *Miller* and because much of the evidence was excludable as improper legal opinion. After Boulware was convicted a second time, we affirmed the district court's denial of the proffer because *Miller* required "some demonstration on the part of the defendant or corporation that distributions were intended to be a return of capital." *Boulware II*, 470 F.3d at 933-34.

The Supreme Court reversed *Boulware II*, holding that the *Miller* rule upon which the panel was required to rely was incorrect, and concluding that a defendant could establish a return of capital or assert the return of capital theory without a showing of contemporaneous intent to make a distribution. 128 S. Ct. at 1180. As the Court noted, under the relevant statutory sections, "the tax consequences of a 'distribution by a corporation with respect to its stock' depend, not on anyone's purpose to return capital or to get it back, but on facts wholly independent of intent: whether the corporation had earnings and profits, and the amount of the taxpayer's basis for his stock." *Id.* at 1177.

The Supreme Court agreed, however, that the theory requires more than merely showing that the corporation lacked earnings and the recipient's stock basis was in excess of the distribution, emphasizing that there must be evidence that the distribution was "with respect to . . . stock." *Id.* at 1180. The Supreme Court then remanded with instructions for us to reconsider the proffer in light of its decision and the entire record of the case.

We review a district court's decision to admit or exclude expert opinion testimony under the deferential abuse of discretion standard. *United States v. McCaleb*, 552 F.3d 1053, 1060 (9th Cir. 2009). We review *de novo* whether an offer of proof satisfies the elements of the asserted defense. *United States v. Schoon*, 971 F.2d 193, 195 (9th Cir. 1992).

II

**[1]** "Due process requires that criminal prosecutions 'comport with prevailing notions of fundamental fairness' and that 'criminal defendants be afforded a meaningful opportunity to present a complete defense.' " *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). "A defendant is entitled to an instruction on his theory of the case if the theory is legally cognizable and there is evidence upon which the jury could rationally find for the defendant." *United States v. Morton*, 999 F.2d 435, 437 (9th Cir. 1993).

On remand, the question for us is whether the tender of evidence to support the "return of capital" theory was sufficient to allow the presentation of the evidence and theory to the jury. As we noted in *United States v. Kayser*, 488 F.3d 1070, 1076 (9th Cir. 2007):

> The legal standard is generous: "a defendant is entitled to an instruction concerning his theory of the case if the theory is legally sound and evidence in the case makes it applicable, even if the evidence is weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Washington*, 819 F.2d 221, 225 (9th Cir. 1987). A defendant needs to show only that "there is evidence upon which the jury could rationally sustain the defense." *United States v. Jackson*, 726 F.2d 1466, 1468 (9th Cir. 1984) (per curiam).

On the other hand, a trial court may preclude a defense theory where "the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." *United States v. Dorrell*, 758 F.2d 427, 430 (9th Cir. 1985). Counsel must also "articulate every ground on which the evidence is admissible, since a ground not identified at trial will not provide a basis for reversal on appeal." Jack B. Weinstein and Margaret Berger, *Weinstein's Federal Evidence*, § 130.20[5], p. 103-39 (Joseph M. McLaughlin, ed., Matthew Bender 2d. ed. 2008); *see also Hudspeth v. Comm'r*, 914 F.2d 1207, 1215 (9th Cir. 1990) (holding that failure to identify ground of admissibility limited appellate review to plain error).

In support of his assertion of the return of capital theory, Boulware made an offer of proof as to expert testimony and evidence regarding corporate earnings.

## A

**[2]** We need not consider whether Boulware's proffer of expert testimony satisfied the requirement that the defendant minimally establish all the elements of the asserted theory because the trial court denied the proffer on alternate and adequate grounds. In addition to precluding the testimony on the basis of *Miller*, the district court excluded the expert testimony because it constituted a legal opinion. It did not abuse its discretion in doing so. *United States v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999); *see also Aguilar v. International Longshoremen's Union*, 966 F.2d 443, 447 (9th Cir. 1992) (noting matters of law are for the court's determination, not that of an expert witness).

**[3]** Here, Boulware's expert sought to testify that the corporate distributions were legally non-taxable, either because they were loans, monies placed in trust, or returns of capital. The trial court's exclusion of the expert testimony to the extent that it constituted a legal opinion was well within its

discretion. *See Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1059-60 (9th Cir. 2008) ("[A]n expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law.") (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)).

B

Boulware sought to introduce other evidence in support of his return of capital theory. Specifically, Boulware wished to introduce evidence that the corporation had over-reported earnings in its tax returns to show that the corporate distributions to Boulware "could be deemed a constructive dividend or return of capital to Boulware which may or may not be income depending on whether [the corporation] had earnings or profits for the years when the monies were obtained by Boulware."

After a careful examination of the record, we conclude that the district court properly declined the offer of proof as to the return of capital theory because the offer failed to satisfy all the elements of the theory. As the Supreme Court explained in *Boulware III*, the return of capital theory requires: (1) a corporate distribution with respect to a corporation's stock, (2) the absence of corporate earnings or profits, and (3) the stockholder's stock basis be in excess of the value of the distribution. 128 S. Ct. at 1180 & n.12.

The admission of evidence of corporate earnings, by itself, is plainly insufficient to satisfy the elements necessary to assert a return of capital theory. However, in evaluating an offer of proof on appeal, we are not confined to the four corners of the formal offer, but may evaluate "evidence . . . made known to the court." *Movie 1 & 2 v. United Artists Commc'ns, Inc.*, 909 F.2d 1245, 1249 (9th Cir. 1990). Thus, in evaluating whether the defendant was entitled to present a return of capital theory, we examine not only the formal offer

of proof, but the record as a whole to see if "there is evidence upon which the jury could rationally sustain the defense." *Kayser*, 488 F.3d at 1076 (quoting *Jackson*, 726 F.2d at 1468).

However, we will not consider any new offers on appeal, as Boulware seems to suggest we should. *See United States v. Lara-Hernandez*, 588 F.2d 272, 274 (9th Cir. 1978) (holding it was too late to present an additional theory of relevance of evidence after the verdict). "The offer of proof required by Rule 103(a)(2) is meant to give the trial judge *contemporaneous* knowledge about the proposed evidence, so that the judge can make a proper ruling on the evidence at the time it is offered." Weinstein at § 130.20[4], p. 103-38.1. The point of an offer of proof is to preserve the issue for appeal, not to create a new evidentiary issue on appeal. In addition, except in extraordinary circumstances, we generally will not allow parties to supplement the record on appeal. *See Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003) (noting the general rule against supplementation of the trial record on appeal and that Fed. R. App. P. 10(e)(2)(C) allows the court of appeals to supplement the record only by formal motion based on extraordinary circumstances or error correction).

1

**[4]** The first element necessary to the assertion of a return of capital theory is that the corporate distribution be "with respect to . . . stock." *Boulware III*, 128 S. Ct. at 1180. The Supreme Court declined to define this element in any particularity, noting:

> This, however, is not the time or place to home in on the "with respect to . . . stock" condition. Facts with a bearing on it may range from the distribution of stock ownership to conditions of corporate employment (whether, for example, a shareholder's efforts

> on behalf of a corporation amount to a good reason to treat a payment of property as salary).

*Id.* at 1180-81 (footnote omitted).

**[5]** Despite the Supreme Court's rejection of a contemporaneous intent requirement for the return of capital theory, the government contends that we should require the defendant to make some showing of intent before a distribution may be considered to be "with respect to stock." This suggestion flies squarely in the face of the Supreme Court's admonition in *Boulware III* that the tax consequences of a corporate distribution should be evaluated "on facts wholly independent of intent." 128 S. Ct. at 1177.

**[6]** As the Supreme Court explained, because a particular corporate distribution with respect to stock may be considered ordinary income, capital gain, or a non-taxable event, depending on corporate earnings and profits and the taxpayer's basis in the stock,[3] "[t]he determination is computational and not dependent upon intent." *Id.* (quoting IRS Non Docketed Service Advice Review, 1989 WL 1172952 (Mar. 15, 1989)). In short, in this context, "intent is irrelevant." *Id.* (quoting IRS Non Docketed Service Advice Review, 1989 WL 1172952). An intent-based requirement would also eviscerate the tax evasion statute's requirement of a tax deficiency, meaning that a taxpayer could be found guilty of tax evasion without owing taxes. *Boulware II*, 470 F.3d at 938 (Thomas, J., concurring). Further, importing a new intent requirement would

---

[3]Under § 301(a), unless the Internal Revenue Code requires otherwise, "a distribution of property . . . made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in [§ 301(c)]." Section 301(c) provides that the portion of the distribution that is a "dividend," as defined by § 316(a), must be included in the recipient's gross income; the portion that is not a dividend is, depending on the shareholder's basis for his stock, either a nontaxable return of capital or a taxable capital gain. Section 316(a) defines "dividend" as a "distribution" out of "earnings and profits."

create a divergence in civil and criminal return of capital theory—a divergence that is not warranted absent unusual circumstances. *Id.*; *see also United States v. Bok*, 156 F.3d 157, 162 (2d Cir. 1998) ("[T]he return of capital theory applies equally in both criminal and civil cases, assuming that the diversion itself was not unlawful."). As the Supreme Court aptly noted, "economic substance remains the right touchstone for characterizing funds received when a shareholder diverts them before they can be recorded on the corporation's books." *Boulware III*, 128 S.Ct. at 1176.

Thus, we reject the government's attempt on remand to graft on a requirement that the taxpayer establish intent as part of the determination as to whether a distribution "was with respect to stock."[4]

Boulware urges on remand that a taxpayer is entitled to a jury instruction on the return of capital theory if he shows he owned stock, received payments from the corporation, and did not receive those payments in any nonstockholder capacity. Even under this definition, Boulware's proffer is insufficient. He failed to establish in the record before the district court that he only could have received the distribution in his capacity as a shareholder. To the contrary, Boulware offered evidence and alternate theories that the distribution was a loan or was distributed in trust. Moreover, the proffer only referenced

---

[4]We also reject the government's argument, raised for the first time on remand, that only the government—not the taxpayer—may attempt to characterize a transaction as "with respect to stock" after the transaction has occurred. We previously rejected this argument in *Kayser*, holding that nothing precluded a defendant in a tax evasion case "from asserting a defense that is inconsistent with information falsely reported on his challenged tax returns." 488 F.3d at 1074. As we further noted, a taxpayer was entitled "to present evidence at trial regarding the facts of the transaction at issue, notwithstanding the defendant's improper or 'scrambled' reporting of those facts." *Id.* Although *Kayser* discussed this issue in the context of *Miller*, there is nothing about the reformulated return of capital requirements in *Boulware III* that would lead us to a different conclusion.

corporate earnings, without any offer to prove that the distribution was "with respect to stock," or that any nexus existed between the distribution and Boulware's stock ownership. Under *de novo* review of the offer of proof and the record, absent affirmative evidence of nexus or support for a negative inference we must conclude that the trial court did not err in denying the offer of proof.[5]

[7] The Supreme Court declined the opportunity to define the contours of the phrase "with respect to stock," leaving that for another day. So do we.[6] It suffices, however, to say that at the very least a taxpayer must tender some evidence of nexus between the corporate distribution and stock ownership, or show that there were no other alternate explanations,[7] in order to proceed with a return of capital theory at trial. Boulware did neither, and the district court was justified in declining to allow him to present another alternative theory to the jury.

2

[8] The third element[8] necessary to show that a distribution

---

[5]We recognize, of course, that the argument before the trial court primarily involved the application of *Miller* and that we are viewing this case in hindsight. However, that fact does not relieve the defendant of making an offer of proof that satisfies all the elements of the theory asserted.

[6]We also decline, as did the Supreme Court, to consider the implications of *Holland v. United States*, 348 U.S. 121(1954), and *Sandstrom v. Montana*, 442 U.S. 510, in this context because the issues raised in those cases are not squarely presented here.

[7]Put another way, "when you have eliminated the impossible, whatever remains, however improbable, must be the truth." Sir Arthur Conan Doyle, *Tales of Sherlock Holmes: The Sign of the Four*, p. 228 (Grosset & Dunlap 1892). Of course, a defendant may pursue alternative theories. However, when one attempts to characterize a transaction solely by negative inference, rather than affirmative proof, one usually must eliminate other possible theories, not prove their viability.

[8]We need not discuss the second element—the absence of corporate earnings or profit—because it was included in Boulware's offer of proof.

was a non-taxable return of capital is that the stockholder's stock basis exceeded the value of the distribution. Boulware's offer of proof did not, on its face, purport to tender evidence on this element. Therefore, we look to the entire record to ascertain whether there was sufficient evidence to make a threshold showing.

[9] The corporate distributions to Boulware totaled $10 million. Thus, in order for the distributions to be considered returns of capital, his stock basis must equal or exceed that amount. There is no formal evidence of Boulware's stock basis in the record, nor did he make an offer of proof as to the amount. In the record, Boulware testified to spending approximately $2 million purchasing Kona coffee beans for the business. He also claims to have borrowed $1.2 million from the corporation to buy equipment for the water plant, and that the water business was given back to the corporation in return for "30 percent more stocks or something." From all of this evidence a jury could conclude that Boulware was a shareholder with a stock basis, but the evidence tendered was insufficient to meet the threshold requirement that he have a stock basis in excess of $10 million.

[10] Therefore, Boulware's tender of proof did not satisfy the requirement that the corporate distribution exceed the taxpayer's basis in stock, providing an additional justification for the trial court to preclude Boulware from presenting a return of capital theory.[9]

_____

[9]We recognize that the government did not raise this objection at trial. Indeed, this issue was first raised by the government in its reply brief to Boulware's petition for rehearing en banc in this court. The Supreme Court noted that the government had conceded that Boulware's basis was

## III

**[11]** In sum, analyzing the specific offer of proof and the record as a whole, we conclude that Boulware's offer of proof was insufficient as a matter of law to support the proffered return of capital theory. We also conclude that the district court did not abuse its discretion in excluding expert legal opinion. Therefore, we conclude that Boulware is not entitled to a third trial. We need not, and do not, reach any other issue urged by the parties.

**AFFIRMED.**

---

sufficient in its presentation, *Boulware III*, 128 S. Ct. at 1180 n.12 ("Nor does the Government dispute that Boulware offered sufficient evidence of his basis . . . ." ), although the government now disputes that it conceded anything. Under other circumstances, we might well consider the objection waived and decline to exercise our discretion to entertain it. Nevertheless, on remand with instructions to consider the offer in light of the whole record, and mindful that judicial economy militates against ordering a new trial on speculative assertions, we exercise our discretion in this case to analyze whether the element has been satisfied sufficiently to allow presentation of the theory to a jury at a new trial.