**KENNETH AUGUSTINE, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2010-0016

Supreme Court of the Virgin Islands

August 29, 2011

679

680

KELE ONYEJEKWE, ESQ., Territorial Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

MATTHEW PHELAN, ESQ., Department of Justice, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(August 29, 2011)

HODGE, C.J. Kenneth Augustine appeals his convictions for three counts of third degree assault, three counts of unauthorized use of an unlicensed firearm during the commission of a third degree assault, and one count of reckless endangerment in the first degree arising from an alleged shootout with three police officers. On appeal he challenges the sufficiency of the evidence, argues that he was improperly convicted of the three counts of third degree assault, and claims that he was denied a fair trial. For the reasons discussed below, we reject Augustine's arguments and affirm the judgment of the Superior Court.

### I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

The People presented evidence at trial that on October 3, 2008, at approximately 9:15 p.m., Officer Derrick Greaves, Sr. responded to a

report of an individual carrying a gun near Lake's Chicken Fry restaurant in Smith Bay, St. Thomas. Officers Kendelth Wharton and Jose Allen also responded to the report and arrived on the scene shortly thereafter. Upon their arrival, the three officers identified an individual walking away from the chicken fry restaurant who fit the description given to them by Central Dispatch of the person reported to be carrying a gun — a black male wearing a red shirt, long black pants, and a black and red Rastafarian hat. Officer Wharton testified that he immediately recognized the individual as Augustine, a person whom he had known for approximately a year. The officers approached Augustine, and Officer Greaves identified himself as a police officer and ordered Augustine to stop. Augustine ignored Officer Greaves's orders, and as he was retreating he reached into his pants pocket, drew a black handgun, and began firing at the three officers. The officers returned fire and Augustine fled between the restaurant and Value Foods mini mart while continuing to fire at the officers.

After the officers chased Augustine behind the mini mart, one of them shot him in the leg, causing him to fall to the ground, and Officer Wharton approached Augustine and ordered him not to move.[1] Officer Wharton was not able to take Augustine into custody at that time because someone else in the vicinity began discharging a firearm, which caused Officer Wharton to abandon Augustine and retreat to safety. After a few minutes Officer Wharton went to his vehicle, obtained his bullet proof vest, and returned to the area behind the mini mart where he had left Augustine. Augustine, however, was no longer there. In his place were a black and red Rastafarian hat, a black handgun, and a pool of blood.[2] Officer Wharton and a member of the K-9 unit followed a blood trail from the pool of blood which led away from the mini mart, through several yards,

---

[1] Officer Wharton testified that he was right next to Augustine when he ordered Augustine not to move.

[2] The People presented expert witnesses who testified that Augustine's DNA was found on the black and red Rastafarian hat and the black handgun, that Augustine's palms and shirt tested positive for gunshot residue, and that the blood from the scene of the shootout leading to Augustine belonged to Augustine. Augustine challenged this evidence by presenting his own experts who testified that his DNA was not on the black handgun and that there was no gunshot residue found on either his palms or his shirt. Augustine's experts, however, could not refute that his DNA was on the black and red Rastafarian hat and that the blood at the crime scene was his.

and into the yard of a retired police officer where Officer Wharton found Augustine bleeding from a gunshot wound to his leg.[3]

The jury returned a verdict finding Augustine guilty of three counts of third degree assault, three counts of unauthorized use of an unlicensed firearm during the commission of a third degree assault, and one count of reckless endangerment in the first degree.[4] The Superior Court subsequently entered judgment on February 3, 2010, and Augustine filed his timely notice of appeal on February 2, 2010.

## II. ANALYSIS

### A. Jurisdiction and Standard of Review

According to title 4, section 32(a) of the Virgin Islands Code, this Court possesses jurisdiction "over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). Since the Superior Court's February 3, 2010 Judgment and Commitment constitutes a final judgment, we possess jurisdiction over Augustine's appeal.

Our standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). When a defendant challenges the sufficiency of the evidence presented at trial, we must view the evidence in the light most favorable to the People and affirm the conviction unless it is clear that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Stevens v. People*, 52 V.I. 294, 304 (V.I. 2009).

### B. The Evidence Establishing Augustine as the Shooter

Augustine argues that because of the unreliability of eyewitness identifications and the testimony of his experts that his DNA was not on the black handgun and that there was no gunshot residue found on him or his clothes, there was insufficient evidence to convict him of third degree assault. This argument, however, ignores the evidence presented at trial

---

[3] Officer Allen testified that he also followed the trail of blood, which led him to a yard where he found Augustine lying in a pool of blood.

[4] The jury, however, found Augustine not guilty of three counts of first degree assault and three counts of unauthorized use of a firearm during the commission of a first degree assault.

683

and is in direct contradiction to the standard of review for evaluating the sufficiency of the evidence. In assessing whether the People presented sufficient evidence to convict Augustine of third degree assault, this Court is required to view the evidence in the light most favorable to the People and apply a highly deferential standard of review to the jury's verdict. *See Stevens*, 52 V.I. at 304. Moreover, in making this determination, we are prohibited from weighing the evidence or determining the credibility of witnesses. *See id.* at 305.

■ Officers Greaves, Wharton, and Allen each described the individual that pulled a black handgun and began shooting at them as a black male wearing a red shirt, long black pants, and a black and red Rastafarian hat. This description matched what Augustine was found to be wearing when he was apprehended shortly after the shooting, minus the black and red Rastafarian hat which was discovered in the area where he fell after being shot in the leg and was left behind when he fled. The three officers further identified Augustine as the individual that had shot at them. This evidence was bolstered by expert testimony that DNA obtained from the blood, black and red Rastafarian hat, and black handgun left at the scene of the crime by the shooter matched Augustine's. Providing even further support that Augustine was the shooter is the evidence that the trail of blood left by the shooter at the scene of the crime ended in a yard where Augustine was found bleeding from a gunshot wound to his leg, which is where the officers testified the shooter had been shot. Thus, while there may be empirical data raising questions about the reliability of eyewitness identifications in some circumstances, there is no evidence that the officers' identifications in this case were unreliable. Furthermore, the People presented substantial independent evidence corroborating the officers' identification of Augustine as the shooter. We therefore conclude that there was overwhelming evidence presented at trial upon which a rational jury could have found that Augustine was the individual who pulled a gun and started shooting at Officers Greaves, Wharton, and Allen.

### C. Officer Wharton's Testimony

Augustine also claims that Officer Wharton's statement that he knew Augustine prior to the shooting because he had "stopped him several times" deprived him of a fair trial. This statement, Augustine argues, communicated to the jury that he is a life-long criminal and a habitual crook, and it caused the jury to convict him. We disagree.

■ ■ During Officer Wharton's testimony at trial the following colloquy occurred:

> Q Okay, first of all. You knew the defendant before this incident?
>
> A Yes, I do.
>
> Q How do you know him?
>
> A I have stopped him several times.

Augustine's counsel immediately objected to this statement, and the trial court sustained the objection and struck the comment from the record. Moreover, when the jury was not present the trial court noted the potential prejudice of the statement and offered to give a curative instruction. But, in an effort to not draw more attention to the statement, Augustine's counsel declined the curative instruction. Augustine's counsel, however, did not move for a mistrial and the trial court did not grant a mistrial *sua sponte*. Accordingly, we will only review Augustine's claim for plain error. *See United States v. Taylor*, 514 F.3d 1092, 1095-96 (10th Cir. 2008) (holding that plain error is the appropriate standard of review when a defendant objects to a prosecutor's comments at trial, does not move for a mistrial, and then on appeal argues that the comments deprived him of a fair trial). Under the plain error rule,

> an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the [trial] court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

*United States v. Marcus*, 560 U.S. ___, 130 S. Ct. 2159, 2164, 176 L. Ed. 2d 1012 (2010) (internal quotation marks and citations omitted).

■ To begin, even if Augustine's attorney had moved for a mistrial, we could not reverse Augustine's conviction unless Officer Wharton's remarks, "taken in the context of the trial as a whole, were sufficiently prejudicial to have deprived [him] of his right to a fair trial." *Gov't of V.I. v. Charleswell*, 24 F.3d 571, 576, 30 V.I. 394 (3d Cir. 1994) (*quoting United States v. DiPasquale*, 740 F.2d 1282, 1297 (3d Cir. 1984)). In order to determine whether the defendant was prejudiced, three

factors must be analyzed: "(1) whether [the witness's] remarks were pronounced and persistent, creating a likelihood they would mislead and prejudice the jury; (2) the strength of the other evidence; and (3) curative action taken by the [trial] court." *United States v. Lore*, 430 F.3d 190, 207 (3d Cir. 2005). Here, while the challenged statement was inappropriate, it was not highly prejudicial. First, the statement was an isolated incident. Second, despite Augustine's claim that the statement communicated to the jury that he is a life-long criminal and a habitual crook, Officer Wharton only said that he had "stopped" Augustine on several occasions, not that he had arrested him. Further, he did not give any indication why he had stopped Augustine. Third, the trial court immediately admonished the jury to disregard Officer Wharton's comment and struck it from the record. And although it did not give a specific curative instruction, the trial court did instruct the jury during final jury instructions not to consider any testimony it had stricken or ordered the jury to disregard during trial. *See United States v. Liburd*, 607 F.3d 339, 344, 53 V.I. 890 (3d Cir. 2010) ("[W]hile curative instructions cannot repair every error, we do generally presume that juries follow their instructions."). Finally, as discussed above in section B, the People presented overwhelming evidence that Augustine was the individual who pulled a gun and started shooting at Officers Greaves, Wharton, and Allen. Based on these factors, Officer Wharton's statement — given in response to a question — would not have been sufficiently prejudicial to warrant a mistrial even if Augustine's attorney had requested one at trial. *See Ethridge v. State*, 418 P.2d 95, 100 (1966) (holding mistrial not warranted for improper statement by police officer where court sustained defendant's objection and admonished jury to disregard statement and where there was overwhelming evidence of guilt). Thus, we conclude that the Superior Court did not commit any error.

 Additionally, the trial court's failure to grant a mistrial on its own initiative was also not plain error. In *Charleswell*, the Third Circuit addressed whether a trial court's failure to grant a mistrial *sua sponte* constituted plain error. The court stated:

> The plain error doctrine is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result. Its proper role is to correct particularly egregious errors and to redress . . . miscarriages of justice. It is intended to correct errors that are

obvious or that otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings. By its terms, recourse may be had ... only on appeal from a trial infected with error so plain the trial judge [was] derelict in countenancing it, even absent the defendant's timely assistance in detecting it.

*Charleswell*, 24 F.3d at 576-77 (internal quotations marks and citations omitted). Here, there was no error, and the trial judge was therefore not derelict in failing to grant a mistrial. Rather, the trial court acted properly in sustaining the objection, striking the statement from the record, admonishing the jury to disregard the statement, and offering to give the jury a curative instruction. Moreover, Officer Wharton's remarks were not sufficiently prejudicial to have deprived Augustine of his right to a fair trial. Therefore, the trial court did not commit plain error in failing to declare a mistrial *sua sponte. Id.* at 577.

## D. The Relationship Between Title 14, Section 2253(a) and Title 14, Section 297(2)

Augustine next argues that third degree assault, as defined by 14 V.I.C. § 297(2), is intended to punish individuals "caught with knives, stones, shoes, etc.," while 14 V.I.C. § 2253(a) specifically penalizes the possession of firearms. Augustine thus contends that he cannot be convicted under section 297(2) for assaulting Officers Greaves, Wharton, and Allen with a firearm because the express inclusion of firearms under section 2253(a) excludes them from the definition of a "deadly weapon" under section 297(2). Alternatively, Augustine asserts that the People did not prove that he fired the handgun with the intent to injure the three officers. These arguments lack legal support and are meritless.[5]

The mere fact that section 2253(a) criminalizes the possession of firearms does not mean that the Legislature intended to exclude firearms from the definition of a deadly weapon or from statutes criminalizing the use of a deadly weapon. In fact, section 2253(a) specifically states that the "penalties provided for violation of this section shall be in **addition to** the penalty provided for the commission of, or attempt to commit, the felony or crime of violence." (Emphasis added) Moreover, in *Blockburger v.*

---

[5] Augustine's fails to cite any relevant case law supporting the contention that a deadly weapon under 14 V.I.C. § 297(2) cannot include a firearm.

*United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), the United States Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." Here, Section 297(2) imposes criminal liability upon anyone who, "under circumstances not amounting to an assault in the first or second degree . . . assaults another with a deadly weapon," while section 2253(a) makes it unlawful for anyone "unless otherwise authorized by law [to], ha[ve], possess[], bear[], transport[] or carr[y] either, actually or constructively, openly or concealed any firearm." Thus, the plain language of these two statutes clearly indicates that each of these offenses requires proof of additional facts which the other does not. *See Gov't of the V.I. v. O'Bryan*, 17 V.I. 504, 505 (D.V.I. 1980). We therefore reject Augustine's argument that section 2253(a) prevents him from being charged with assaulting three police officers with a deadly weapon under section 297(2) when the deadly weapon is a firearm.

 Likewise, Augustine's claim that the People did not prove that he fired the handgun with the intent to injure the three officers is in direct contradiction to the evidence presented at trial. Officers Greaves, Wharton, and Allen each testified that as they approached Augustine, Officer Greaves identified himself as a police officer and ordered him to stop. All three officers further testified that Augustine ignored Officer Greaves's orders and began to flee the scene instead. And as he fled, Augustine reached into his pants pocket, drew a black handgun, and began firing at them. This testimony establishes that Augustine was aware of the presence of the officers at the time he drew his firearm, and that he purposefully fired his handgun at them. A reasonable jury could therefore infer that Augustine intended to shoot the three officers, and that he did so using a deadly weapon — the black handgun. Accordingly, we also reject Augustine's argument that the People failed to prove that he intended to injure the officers when he fired his handgun.

### E. Augustine's Conviction for Reckless Endangerment

Finally, Augustine asserts that there was insufficient evidence to convict him of reckless endangerment because the People failed to prove that he engaged in conduct that created a grave risk of death to another person. Augustine also argues that the People failed to establish that the

area where the shooting occurred was a public place. Again, however, Augustine's arguments are in direct contradiction to the evidence presented at trial.

Under title 14, section 625(a), "[a] person is guilty of reckless endangerment in the first degree when, under the circumstances evidencing a depraved indifference to human life, he recklessly engages in conduct in a public place which creates a grave risk of death to another person." Section 625 further defines "public place" as "a place to which the general public has a right to resort; but a place which is in point of fact public rather than private, and visited by many persons and *usually accessible* to the public." 14 V.I.C. § 625(c)(2) (emphasis added). The evidence at trial established that Officers Greaves, Wharton, and Allen encountered Augustine on the public road in front of the chicken fry restaurant, where Augustine initially drew his firearm and began shooting at the three officers. The officers then testified that they returned fire, and that Augustine fled between the restaurant and the adjacent mini mart while continuing to fire at them.

■■■■■■■ The testimony that Augustine fired a gun at three police officers was sufficient to allow the jury to conclude that Augustine created a grave risk of death to Officers Greaves, Wharton, and Allen, as well as any other members of the public that were in the area at the time. *See State v. Coward*, 292 Conn. 296, 972 A.2d 691, 702-03 (2009) (finding that the act of firing a loaded gun at or near someone "is, by definition, the epitome of reckless conduct creating a grave risk of death under circumstances evincing an extreme indifference to human life"); *State v. Wood*, 180 Ariz. 53, 881 P.2d 1158, 1174 (1994) (holding person is at "grave risk of death" when "directly in the line of fire" or when "in a zone of danger") (internal quotation marks omitted); *State v. Lee*, No. 2 CACR 2008-0150, 2009 WL 975541, at *1 (Ariz. Ct. App. April 10, 2009) (unpublished) ("Aiming and shooting a gun at a person is conduct 'capable of creating a substantial risk of causing death or serious physical injury,' regardless of whether the bullets actually hit anyone."). Furthermore, the evidence also establishes that the shooting between Augustine and the three officers occurred on a public street, directly in front of and around the restaurant and the mini mart. Officer Allen testified that Augustine was standing on the sidewalk in front of the chicken fry restaurant when he began shooting at them, and that he continued firing as he fled towards the mini mart and down the alley

between the restaurant and the mini mart. Officer Allen also testified that at the time of the shooting there were several individuals operating a fruit stand in close proximity to the mini mart. The People additionally introduced numerous photographs depicting the area where the shooting occurred, including the restaurant, the mini mart, and the public road located directly in front of those establishments. Although the People could have done more to clearly establish that the shooting occurred in a public place, there was still sufficient evidence presented at trial to allow the jury to find that the shooting occurred in an area "usually accessible to the public." *See Alcindor v. Gov't of V.I.*, D.C. Crim. No. 2004/84, 2006 WL 3526753, at *3-4 (D.V.I. App. Div. 2006) (holding section 625 only requires "a showing that the conduct was done in a place that is open to the public or where the public has a right to be"). The jury thus had a sufficient basis to conclude that Augustine fired his handgun at Officers Greaves, Wharton, and Allen in a public place.[6]

## III. CONCLUSION

There was sufficient evidence presented at trial to allow the jury to conclude that Augustine was the individual who opened fire on Officers Greaves, Wharton, and Allen, and that the shooting occurred in a public place. Additionally, Officer Wharton's statement that he knew Augustine prior to the shooting because he had stopped him several times was not sufficiently prejudicial to deprive Augustine of a fair trial, and the express inclusion of firearms under title 14, section 2253(a) does not exclude firearms from the definition of a "deadly weapon" under title 14, section 297(2). Therefore, we affirm the judgment of the Superior Court.

---

[6] Augustine argues that the trial court erred in not defining "public place" to the jury. Augustine, however, failed to raise this issue at trial, and the trial court's failure to define the term "public place" did not constitute plain error. *See United States v. McCaleb*, 552 F.3d 1053, 1059 (9th Cir. 2009) ("A [trial] court does not commit plain error by failing to define a word when it is a common word which an average juror can understand and which the average juror could have applied to the facts of [the] case without difficulty.") (quotation marks and citation omitted); *see also id.* (holding trial court did not err in failing to define "manufacture"); *United States v. Garza-Juarez*, 992 F.2d 896, 910 (9th Cir. 1993) (holding that failure to define "possession" was not plain error); *United States v. Chambers*, 918 F.2d 1455, 1460 (9th Cir. 1990) (holding that failure to define "knowingly" was not plain error).