151 T.C. No. 12

UNITED STATES TAX COURT

JASON BONTRAGER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5998-16L.                    Filed December 12, 2018.

P pleaded guilty in 2012 to violation of I.R.C. sec. 7201. The basis for his conviction was that he had aided and abetted his father in evading payment of his father's Federal income tax liability for 1994. In 2013 P filed a petition under chapter 7 of the Bankruptcy Code. At sentencing in 2014 the District Court ordered P to pay restitution of $72,710, representing 10% of the Government's total tax loss attributable to his father's unpaid tax liability for 1994.

Relying on I.R.C. sec. 6201(a)(4), R assessed the $72,710 of restitution that P had been ordered to pay and recorded this assessment as a liability for P's 1994 tax year. When P did not pay the balance of the liability, R began collection action by filing a notice of Federal tax lien (NFTL). After a CDP hearing the settlement officer upheld the filing of the NFTL, and P timely petitioned this Court.

1. Held: I.R.C. sec. 6201(a)(4) authorizes the IRS to assess restitution that a person has been ordered to pay upon conviction of

violating I.R.C. sec. 7201, when his wrongdoing consisted of aiding and abetting the evasion of payment of a third party's tax liability.

2. <u>Held</u>, <u>further</u>, P's restitution liability was not discharged in the bankruptcy proceeding.

3. <u>Held</u>, <u>further</u>, the IRS collection action is sustained.

<u>Holly C. Henson</u>, for petitioner.

<u>Derek S. Pratt</u> and <u>Rachael J. Zepeda</u>, for respondent.

OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case, petitioner seeks review pursuant to sections 6320(c) and 6330(d)(1)[1] of the determination by the Internal Revenue Service (IRS or respondent) to uphold a notice of Federal tax lien (NFTL) filing.  The IRS filed the NFTL to facilitate collection of criminal restitution that it had assessed against petitioner under section 6201(a)(4).  That section authorizes the IRS to "assess and collect the amount of restitution * * * for

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

failure to pay any tax imposed under this title in the same manner as if such amount were such tax."

Petitioner pleaded guilty in 2012 to one count of violating section 7201, which criminalizes willful attempts "to evade or defeat any tax * * * or the payment thereof." The basis for his conviction was that he had aided and abetted his father in evading payment of his father's Federal income tax liability for 1994, which the IRS had assessed in 1998. At sentencing, petitioner was ordered to pay to the IRS restitution of $72,710, representing 10% of the Government's tax loss relating to his father's unpaid tax liability for 1994.

The principal question presented, one of first impression in this Court, is whether section 6201(a)(4) authorizes the IRS to assess restitution that a person has been ordered to pay, upon conviction of violating section 7201, when his wrongdoing consisted of aiding and abetting the evasion of payment of a third party's tax liability. We resolve this question in respondent's favor.

## Background

The parties have submitted the case for decision without trial under Rule 122. Relevant facts have been stipulated or are otherwise included in the record. See Rule 122(a). Pursuant to rule 201 of the Federal Rules of Evidence, we take judicial notice of certain filings in petitioner's criminal case. See United States v.

Bontrager, No. 2:12-CR-00052-RAJ (W.D. Wash.) (Mar. 11, 2014).  Petitioner resided in Arizona when he filed his petition.[2]

Petitioner, Jason Bontrager, is the son of Winston G. Bontrager (Winston). In 1994 Winston was convicted of conspiracy to commit wire fraud, ordered to pay restitution of $687,000, and sentenced to prison for several years.  About the time when he was released from prison, the IRS assessed against him $185,346 of Federal income tax for 1994.

In 1997 petitioner lived in Everett and Snohomish, Washington.  Then aged 26, he had completed some coursework at Seattle University and had worked at several real estate title firms.  In March 1997 he established his own real estate firm, Alexandria Investment Co., Inc. (AIC), of which he was the president and (initially) the sole shareholder.

From age seven until well into his adulthood, petitioner had had little contact with his father.  Shortly after Winston was released from prison, however, he moved to nearby Bellevue, Washington, and offered to help petitioner with the real estate business.  Unwisely perhaps, petitioner accepted his father's offer.

---

[2]Absent stipulation to the contrary, appeal of this case would lie to the U.S. Court of Appeals for the Ninth Circuit.  See sec. 7482(b)(1)(G).  Where relevant to the discussion, we note that court's precedent.  See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).

Winston thereafter played a significant role in the business, exercising substantial control over financing arrangements and negotiating terms for complex real estate deals.

Winston, petitioner, and others eventually became the subjects of a Federal investigation into various crimes, including tax crimes and mortgage fraud. That investigation revealed (among other things) that Winston had evaded payment of his outstanding Federal tax and restitution liabilities by using petitioner's real estate business as a front to conceal Winston's income and assets.

On February 29, 2012, the U.S. Department of Justice filed a criminal information against petitioner in the U.S. District Court for the Western District of Washington. The information alleged one count of violating section 7201 and 18 U.S.C. sec. 2. Section 7201 criminalizes any willful attempt "to evade or defeat any tax imposed by this title [viz., title 26, U.S. Code] or the payment thereof." Title 18 U.S.C. sec. 2 provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

The information alleged that petitioner, from 1998 through 2010, had criminally aided and abetted Winston in evading payment of Winston's 1994 Federal income tax liability. Petitioner was alleged to have done this by using

AIC and a related real estate company to help Winston conceal assets, income, bank accounts, and business interests. The information alleged that petitioner had, for example, issued corporate checks to Winston's female acquaintance, had used corporate funds to purchase a Rolls Royce for Winston's use, had allowed Winston to charge personal expenditures to a corporate credit card, had titled various assets in the names of Winston's nominees, and had used offshore accounts to conceal Winston's income and assets.

That same day petitioner pleaded guilty as charged. Almost two years later, on January 31, 2014, the District Court issued its judgment in petitioner's criminal case. The judgment entered on his plea stated that he was adjudicated guilty of violating "26 U.S.C. § 7201." It stated that his "Offense Ended" on August 9, 2010. And it described the "Nature of [his] Offense" as "Aiding and Abetting the Evasion of Payment of Income Tax."

Petitioner was sentenced to one year in prison and three years of supervised release. At the sentencing hearing the District Court described petitioner as an upstanding member of his community but noted his "very significant role" in his father's tax-evasion scheme. The parties agreed that the Government's overall tax loss stemming from Winston's unpaid 1994 tax liability was $727,096, i.e., in-

come tax of $185,346, additions to tax totaling $90,781, and statutory interest of $450,969.

While acknowledging that he could be held liable for the full amount of the tax loss, petitioner asked the sentencing court "to apportion the restitution obligation * * * and to assign ten percent of the total loss to * * *[him] as his separate liability." In light of petitioner's lesser role in the overall scheme, the District Court granted this request, apportioned 10% of the tax loss (or $72,710) to petitioner, and ordered him to pay to the IRS restitution in that amount.

Several months before his sentencing, on October 4, 2013, petitioner filed a petition under chapter 7 of the Bankruptcy Code. During the bankruptcy proceeding, the IRS filed a general unsecured proof of claim for $233,530, of which it ultimately received $17,542 from the bankruptcy estate. On February 20, 2014, several weeks after petitioner's sentencing, the U.S. Bankruptcy Court for the Western District of Washington closed the bankruptcy case by issuing an order of discharge. That order noted that certain types of debts are not discharged in a chapter 7 case, including "[d]ebts for most fines, penalties, forfeitures, or criminal restitution obligations."

On June 9, 2014, the IRS assessed against petitioner, under section 6201(a)(4), the amount of restitution the District Court had ordered him to pay,

$72,710. The IRS also assessed pursuant to section 6601(a) underpayment interest of $165,508, calculated from the due date of Winston's 1994 tax return. The IRS applied a credit of $17,542 for the payment it had received from petitioner's bankruptcy estate.

On June 3, 2015, after petitioner did not pay the balance of the liability on notice and demand, the IRS filed an NFTL. Upon notification, petitioner timely requested a CDP hearing. In his hearing request he contended that the restitution was not assessable because it was ordered for failure to pay a tax that title 26 imposed upon his father rather than upon him.

Petitioner's hearing request was assigned to a settlement officer (SO) from the IRS Appeals Office. The SO scheduled a telephone hearing for November 4, 2015. At the hearing petitioner challenged the validity of the assessment and sought withdrawal of the lien. He contended that the assessment was invalid, in whole or in part, because: (1) the IRS had no legal authority to assess the restitution, (2) the restitution obligation had been discharged in bankruptcy, (3) the IRS had no legal authority to assess underpayment interest, and (4) the assessment was improperly recorded as a liability on his 1994 tax module. He did not request a collection alternative.

The SO rejected all four arguments. On February 8, 2016, the IRS issued petitioner a notice of determination sustaining the NFTL filing, and he timely petitioned this Court for redetermination. On May 15, 2017, the parties submitted this case for decision without trial under Rule 122.

On March 6, 2018, the parties filed a stipulation of settled issues in which respondent conceded that, under this Court's decision in Klein v. Commissioner, 149 T.C. __ (Oct. 3, 2017), petitioner is not liable for underpayment interest under section 6601(a)(1) on the $72,710 restitution-based assessment. In light of that concession, the issues remaining in live dispute are whether the SO erred in determining that: (1) the IRS had authority under section 6201(a)(4) to assess the restitution and (2) the restitution obligation had not been discharged in bankruptcy.[3]

## Discussion

### I. Standard of Review

Petitioner challenges the restitution-based assessment of $72,710. We treat this amount as being the "underlying tax liability" in this case. See Klein, 149 T.C. at __ (slip op. at 13). The Code expressly precludes review of the amount of

---

[3]The parties had originally presented, as a third question for review, whether the restitution obligation should be assessed on petitioner's 1994 or 2014 tax module. Given respondent's concession that petitioner is not liable for underpayment interest, that question no longer has any practical importance for this case, and we therefore decline to address it.

restitution ordered by the sentencing court.  See sec. 6201(a)(4)(C) ("The amount of such restitution may not be challenged by the person against whom assessed on the basis of the existence or amount of the underlying tax liability in any proceeding authorized by this title[.]").

When the taxpayer's underlying liability is not properly at issue, the Court reviews the SO's determination for abuse of discretion.  Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  In this case our evaluation of the questions presented turns largely on issues of law.  The standard of review we apply thus makes little difference; as a rule, we must reject the SO's determinations to the extent they were based on erroneous views of the law.  See Kendricks v. Commissioner, 124 T.C. 69, 75 (2005) ("Whether characterized as a review for abuse of discretion or as a consideration 'de novo' (of a question of law), we must reject erroneous views of the law."); Swanson v. Commissioner, 121 T.C. 111, 119 (2003) ("If respondent's determination was based on erroneous views of the law and petitioner's unpaid liabilities were discharged in bankruptcy, then we must reject respondent's views and find that there was an abuse of discretion.").

II.    Validity of Assessment

The IRS can make a restitution-based assessment only to the extent authorized by section 6201(a)(4)(A).  That section provides that the Secretary "shall as-

sess and collect the amount of restitution under an order pursuant to section 3556 of title 18, United States Code, for failure to pay any tax imposed under this title [viz., title 26] in the same manner as if such amount were such tax." The parties agree that the restitution obligation at issue arose "under an order pursuant to section 3556 of title 18."[4] They disagree, however, as to whether this restitution was ordered "for failure to pay any tax imposed under this title."

The restitution petitioner was ordered to pay equals 10% of the Government's loss attributable to Winston's unpaid tax liability for 1994. In petitioner's view this restitution falls outside the scope of section 6201(a)(4) because it was ordered for failure to pay a tax that title 26 imposed, not upon him, but upon his father. Petitioner thus reads "tax imposed under this title," as used in section 6201(a)(4), to mean "tax imposed upon him under this title." The answer to the question presented depends on whether this gloss is correct.

---

[4]Title 18 U.S.C. sec. 3556 (2012) provides that "[t]he court, in imposing a sentence on a defendant who has been found guilty of an offense[,] * * * may order restitution in accordance with section 3663." The latter section permits the court to "order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. sec. 3663(a)(3) (2012). Tax crimes under title 26 are covered by 18 U.S.C. sec. 3663(a)(3). See United States v. Soderling, 970 F.2d 529, 534 (9th Cir. 1992) ("[S]ection 3663(a)(3) applies to offenses under any title of the United States Code."). Petitioner agreed to pay restitution as a part of his guilty plea, which left the amount of the restitution to be apportioned by the sentencing court pursuant to its authority under 18 U.S.C. sec. 3664(h) (2012).

- 12 -

"We begin our inquiry, as we must, by considering the plain and ordinary meaning of the text Congress enacted." Klein, 149 T.C. at __ (slip op. at 17) (citing Jimenez v. Quarterman, 555 U.S. 113, 118 (2009), and Rainero v. Archon Corp., 844 F.3d 832, 837 (9th Cir. 2016)). Section 6201(a)(4) authorizes assessment and collection of restitution "under an order pursuant to section 3556 of title 18." The latter section provides (as relevant here) that "[t]he court, in imposing a sentence on a defendant who has been found guilty of an offense[,] * * * may order restitution in accordance with [18.U.S.C.] section 3663."

We thus start with the District Court's sentencing order. That order stated that petitioner was adjudicated guilty of violating "26 U.S.C. § 7201." Section 7201 criminalizes any willful attempt "in any manner to evade or defeat any tax imposed by this title or the payment thereof." The elements of a section 7201 offense are "(1) willfulness; (2) the existence of a tax deficiency; and (3) an affirmative act constituting an evasion or attempted evasion of the tax." United States v. Kayser, 488 F.3d 1070, 1073 (9th Cir. 2007) (citing Sansone v. United States, 380 U.S. 343, 351 (1965)). The second element is equivalent to a failure to pay tax. See United States v. DeTar, 832 F.2d 1110, 1113 (9th Cir. 1987) (noting that the first two elements of a section 7201 offense are the same as the elements of an offense under section 7203, which criminalizes any willful failure to pay tax);

United States v. Fisher, 607 F. App'x 645, 646 (9th Cir. 2015) ("It is undisputed that § 7203 is a lesser included offense of § 7201.").

The sentencing order described the nature of petitioner's offense as "aiding and abetting the evasion of payment of income tax," within the meaning of 18 U.S.C. sec. 2. This section does not make "aiding and abetting" a distinct crime. Rather, it provides that a person who "aids, abets, counsels, commands, induces or procures" the commission of an offense against the United States "is punishable as a principal." See United States v. Snider, 957 F.2d 703, 706 (9th Cir. 1992) ("Section 2 does not establish 'an offense' of which a defendant may be convicted; it merely determines which offenders may be punished as principals."). Restitution orders in this setting are thus based on the underlying crime, not on the aiding and abetting.

Section 6201(a)(4) authorizes the Commissioner to assess and collect the amount of restitution under a sentencing order "for failure to pay any tax imposed under this title." Petitioner was convicted of violating section 7201. He was thus found guilty of attempting "to evade or defeat [a] tax imposed by this title or the payment thereof." Because failure to pay a tax imposed by title 26 was an element of the offense with which petitioner was charged, and because he was convicted of

that offense, section 6201(a)(4) by its terms authorized respondent to assess and collect the amount of restitution that petitioner was ordered to pay.

Petitioner notes correctly that the tax, the payment of which he was convicted of evading, was not originally imposed <u>upon him</u> by title 26. But neither section 7201 nor section 6201(a)(4) requires that this be the case. Section 7201 criminalizes any willful attempt to evade payment of "any tax imposed by this title." Section 6201(a)(4) authorizes the assessment of restitution "for failure to pay any tax imposed under this title." Petitioner was ordered to pay restitution for aiding and abetting Winston's failure to pay Federal income tax. That tax was clearly "[a] tax imposed under this title."

The phrase "any tax imposed under this title" in section 6201(a)(4) contains no limiting language. "Read naturally, the word 'any' has an expansive meaning." <u>United States v. Gonzales</u>, 520 U.S. 1, 5 (1997). In <u>Gonzales</u>, the Supreme Court was called upon to interpret the meaning of the phrase, "any other term of imprisonment" as used in 18 U.S.C. sec. 924 (c)(1) (1994). Because Congress had included no language limiting the scope of "any," the Court held that "any * * * term of imprisonment" must be construed "as referring to all 'terms of imprisonment,' including those imposed by state courts." <u>See</u> <u>Gonzales</u>, 520 U.S. at 5.

Reasoning similarly here, we conclude that the term "any tax imposed under this title" includes all taxes imposed under title 26. The tax that petitioner was convicted of willfully attempting to evade the payment of--Winston's income tax liability for 1994--was "[a] tax imposed under this title." Because "failure to pay [a] tax imposed under this title" was an element of the crime of which petitioner was convicted, section 6201(a)(4) authorized respondent to assess and collect that restitution. The statute's text does not support the limiting gloss that petitioner seeks to place upon it.

The statute's purpose likewise counsels rejection of petitioner's proposed construction. Historically, principal responsibility for restitution has lain with the Financial Litigation Unit (FLU) at the U.S. Attorney's Office. Klein, 149 T.C. at __ (slip op. at 16). "The FLU reported restitution payments to the sentencing court and eventually transmitted the funds to the IRS." Ibid. But before 2010 the IRS typically had no account receivable against which restitution payments it received could be credited, because it usually had not yet completed (or even begun) a civil examination of the defendant taxpayer and assessed the tax. Section 6201(a)(4) cured this problem by allowing the IRS to assess and collect the restitution amount immediately "as if such amount were such tax." See Klein, 149 T.C. at __ (slip op. at 26-27).

If the IRS cannot assess restitution of the sort involved here, the problem Congress aimed to solve in 2010 would be perpetuated for a subset of restitution payments. Indeed, the problem would be particularly acute in this context. The IRS cannot commence an examination of petitioner to determine Winston's 1994 civil tax liability. Thus, it could never make an assessment against petitioner for that tax unless permitted to do so by section 6201(a)(4). And this problem could arise in the case of restitution ordered, not just for violations of section 7201, but for violations of other Code provisions. See, e.g., secs. 7202 (willful failure to collect or pay over tax) and 7203 (willful failure to file, supply information, or pay tax). We decline to find a gap in the statutory scheme in the absence of any textual evidence suggesting that such gap exists.

We thus conclude that section 6201(a)(4) authorized the IRS to assess the restitution at issue. That section directs the Commissioner to assess and collect restitution ordered "for failure to pay any tax imposed under this title." Sec. 6201(a)(4)(A). Winston's 1994 Federal income tax was "[a] tax imposed under this title," and petitioner was convicted of violating section 7201, which involved willful failure to pay that tax. The plain language of the statute, supported by the

policy goal Congress sought to achieve, justifies the assessment of restitution in these circumstances.[5]

III.   Bankruptcy Discharge

Petitioner asserts that his restitution obligation was discharged in his 2013-2014 bankruptcy proceeding. Under the Bankruptcy Code, restitution obligations imposed under title 18 are generally excepted from a chapter 7 discharge. See 11 U.S.C. secs. 523(a)(13), 727(b) (2012); Olson v. United States (In re Olson), 154 B.R. 276, 285 (Bankr. D.N.D. 1993) ("[R]estitution owing to the IRS as part of the Debtor's criminal sentence is not dischargeable."). Indeed, the discharge order that petitioner received stated that "[d]ebts for most fines, penalties, forfeitures, or criminal restitution obligations" are not discharged.

However, certain actions taken by a creditor during a bankruptcy proceeding may result in the creditor's waiving the nondischargeability of his claim. See, e.g., In re Garrett, 2017 WL 2990376, at *4 (B.A.P. 9th Cir. July 14, 2017) (holding that creditor waived claim of nondischargeability by failing to raise certain

---

[5]Petitioner contends that he cannot be held responsible for his father's tax liability for 1994, which arose before he and Winston began doing business together. This is an impermissible attempt to relitigate the criminal case. Petitioner pleaded guilty to a violation of section 7201, and he was punishable as a principal for that crime. He was ordered to pay restitution for evading payment of a tax imposed under title 26, and he cannot now challenge the restitution he was ordered to pay. See sec. 6201(a)(4)(C).

claims during the bankruptcy case). Petitioner asserts that a waiver occurred here. Specifically, he contends that the IRS waived the nondischargeability of the restitution obligation by filing a claim as a general unsecured creditor in petitioner's chapter 7 case.

Contrary to petitioner's view, nothing in the Bankruptcy Code prevents a creditor of a nondischargeable debt from filing a claim. Generally, all properly filed creditor claims are allowed in a bankruptcy case unless expressly disallowed by the Bankruptcy Court under a specific provision. See 11 U.S.C. sec. 502(a), (b), (d), (e) (2012). None of these provisions disallows claims for nondischargeable debts. And no provision of the Bankruptcy Code prevented the IRS from filing a claim or attached any adverse consequences to its doing so.

Further, the IRS properly filed its claim as a general unsecured creditor. Because the IRS had not assessed the restitution obligation at the time of petitioner's bankruptcy, let alone filed an NFTL, it was required to file its claim as a general unsecured creditor. See In re Bennett, 237 B.R. 918, 923 (Bankr. N.D. Tex. 1999) (holding that the IRS could file only a general unsecured claim when it had not filed an NFTL before the commencement of the chapter 7 case). Petitioner has cited no legal authority for the proposition that the IRS' filing of this claim effected a waiver of any kind.

In sum, we conclude that petitioner's restitution obligation was not discharged in his prior bankruptcy and that section 6201(a)(4) authorized the Commissioner to assess and collect that amount as if it were a tax. Taking account of respondent's concession that the restitution-based assessment does not attract underpayment interest under section 6601(a), we will sustain the collection action as set forth in the notice of determination.

To reflect the foregoing,

<u>An appropriate decision will be entered</u>.